UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00910-TBR-CHL

GREGORY S. GREEN,                                                               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                Defendant.

### MEMORANDUM OPINION

Gregory S. Green filed this lawsuit against the Commissioner of the Social Security Administration. Green challenges the Commissioner's decision to deny him disability insurance benefits. For following reasons, the Commissioner's decision is **AFFIRMED**, and Green's action is **DISMISSED WITH PREJUDICE**.

### I.

In January 2013, Green applied for disability insurance benefits. [A.R. at 165.] Originally, he alleged disability beginning on February 6, 2012. [*Id.*] He later amended his claim to allege disability beginning on November 7, 2013. [*Id.* at 184.] The Commissioner denied Green's claims on initial review and on reconsideration. [*Id.* at 88, 116.] Green requested a hearing before an administrative law judge. [*Id.* at 120.] On July 14, 2014, Green appeared, with counsel, at a hearing before an ALJ. [*Id.* at 30.] Both Green and Sharon B. Lane, a vocational expert, testified. [*Id.* at 34–72.]

The ALJ denied Green's claim. [*Id.* at 11.] Using the traditional five-step evaluation for disability benefits, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ made the following findings. First, the ALJ found that Green had not engaged in substantial gainful activity since November 7, 2013. [*Id.* at 16.] Second, Green has several severe impairments, including "degenerative joint disease of the knees, shoulders, right foot,

right ankle, hands and wrists; bursitis of the hips; degenerative joint disease/tendonitis of the elbows; history of carpal tunnel syndrome; degenerative disc disease of the cervical and lumbar spine and sleep apnea." [*Id.* (citing 20 C.F.R. § 404.1520(c)).] Third, the ALJ found that Green's impairments do not meet or equal one of the Commissioner's recognized impairments. [*Id.* at 18.] Fourth, the ALJ found that Green has the residual functional capacity to perform sedentary work. [*Id.* at 19–20.] Having found Green capable of performing past relevant work as a human resource specialist, the ALJ did not reach the fifth step, but instead determined that Green is not disabled within the meaning of the Social Security Act. [*Id.* at 24–25.]

The Appeals Council declined to review the ALJ's decision. [*Id.* at 1.] Accordingly, the ALJ's denial became the final decision of the Commissioner of Social Security. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004) (citing *Miles v. Chater*, 84 F.3d 1397, 1399 (11th Cir. 1996)). Pursuant to 42 U.S.C. § 405(g), Green brought this action to obtain judicial review of the Commissioner's decision. [*See* R. 1 (Complaint).] He asks the Court to reverse the ALJ's decision. [*See* R. 13 (Motion for Summary Judgment).] The Commissioner opposes that motion. [*See* R. 18 (Response).]

II.

Judicial review of the Commissioner's determination is deferential. *See* 42 U.S.C. § 405(g); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The scope of that inquiry is limited to (1) "whether the findings of the ALJ are supported by substantial evidence" and (2) "whether the ALJ applied the correct legal standards." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley*, 581

2

F.3d at 405–06). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Even if supported by substantial evidence, however, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.

As previewed above, the Commissioner evaluates whether a claimant is disabled through a sequential five-step process. *See* 20 C.F.R. § 404.1520(a)(1), (4); *see also Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). The claimant has the burden of proof during the first four of those steps. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the claimant meets the burden at step four, the burden shifts to the Commissioner. *Rabbers*, 582 F.3d at 652. Step four is at issue in this case.

There, the ALJ considers the claimant's residual functional capacity and past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity is the claimant's "remaining capacity for work once [his] limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)). In determining whether a claimant can perform his past relevant work, the Commissioner may consult a vocational expert who "may offer relevant evidence within his or her expertise or

3

knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). It is the claimant's burden to cross-examine a vocational expert. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006). Once a vocational expert testifies that there is no conflict between the *Dictionary of Occupational Titles* and the vocational expert's opinion, the ALJ has no duty to cross-examine the vocational expert any further. *Lindsley*, 560 F.3d at 606.

In this case, Green objects to the ALJ's step-four findings. [R. 13-1 at 2 (Memorandum in Support).] He raises three arguments. [*Id.* at 2–8.] The Court will address each in turn.

### A.

To begin, Green takes issue with the ALJ's finding that he is capable of performing his past relevant work as a human resource specialist as that job is "generally performed in the national economy," instead of treating his position as a "composite job." [*Id.* at 3–5.] A "composite job" is a job that has "significant elements of two or more occupations and, as such, have no counterpart" in the *Dictionary of Occupational Titles*. SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). Green argues that the ALJ may not, per the Commissioner's guidance, deny a claim at step four by finding that a claimant remains capable of performing a composite job "as generally performed." [R. 13-1 at 3 (citing Soc. Sec. Admin., *Program Operations Manual System* (POMS) § DI 25005.020(B) (2011)).] The Court disagrees for three reasons.

First, Green's reliance on the Commissioner's statement in the POMS to show that the ALJ erred as a matter of law goes too far. Although the Court may rely on a

4

POMS policy statement as persuasive authority, it lacks the force and effect of law. *Davis v. Sec. of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989).

Second, Green has not shown that the ALJ erred in failing to consider the Army human resource specialist position as a composite job. Green's testimony about his three years as a human resource specialist did little to illuminate how that position could be a composite job. He described the job as "desk work" where he processed orders for service members. [A.R. at 38–39.] Later, he clarified that the job involved lifting heavy boxes. [*Id.* at 41.] His testimony fell short of meeting his burden that the human resources job was a composite job because it had "significant elements of two or more occupations." SSR 82-61, 1982 WL 31387, at *2.

Third, although the ALJ did not explicitly refer to the human resource job as a composite job in the written decision, the ALJ's direct examination of Green indicates that the ALJ considered the likelihood that jobs in the military usually included multiple duties:

> [It] looks like you were in the military for a while there. I always like to put it—you know, obviously in the Army everyone's a soldier, but to a certain extent they're—you know, blowing stuff up isn't something that transfers to the private sector, but there are, of course, a lot of jobs in the military that do have, you know, basically a component to the private sector in terms of being a mechanic, administrative jobs, things like that. Now, what kind of jobs like that did you actually have in the military during your career?

[A.R. at 37.] Green answered that he was a mechanic and later described his work as a human resource specialist. [*Id.* at 37–38.] Still, he provided no testimony that his job as a human resource specialist required him to handle firearms, maintain physical fitness, or undertake other activity sufficient to show that it was a composite job. Green's testimony

falls short of meeting his burden to show that the human resources job was a composite job. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

All things considered, Green has not shown that the ALJ erred by failing to consider his prior work experience as a composite job. Therefore, the ALJ committed no error in considering whether Green could perform that position as generally performed in the national economy.

**B.**

Next, Green argues that the ALJ erred in relying on the vocational expert's testimony when that testimony conflicted with the human resources specialist description in the *Dictionary of Occupational Titles*. [R. 13-1 at 5.] He argues that a limitation for only occasional overhead reaching conflicted with the job of a human resource specialist, which demands frequent reaching. [*Id.* at 5–6.]

At the hearing, the ALJ asked a vocational expert, Sharon B. Lane, to consider an individual whose physical limitation precluded any work above the shoulder level, among other restrictions. [A.R. at 69.] Lane testified that a person with those restrictions could perform work as a human resource specialist as that job is generally performed, but not as Green performed that job. [*Id.*]

Green maintains that the ALJ violated the Commissioner's guidance in SSR 00-4P. [R. 13-1 at 5–6.] SSR 00-4P prohibits ALJs from relying on evidence provided by a vocational expert that is inconsistent with the Commissioner's regulations. SSR 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000). "When there is an *apparent* unresolved conflict between" a vocational expert's testimony and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the

6

evidence to support a determination or decision about whether a claimant is disabled." *Id.* at *2 (emphasis added).

Here, Green has not shown that the alleged conflict between Lane's testimony and the *Dictionary of Occupational Titles* was apparent such that the ALJ should have asked Lane to explain the conflict. Specifically, it is not apparent that a physical limitation precluding work above the shoulder level also precludes work that involves frequent reaching. Therefore, Green has not shown that the ALJ violated SSR 00-4P.

Moreover, Green's counsel asked Lane only one question during the hearing, and that question had nothing to do with whether the human resource specialist job required frequent reaching. Green's counsel asked a hypothetical regarding a claimant who would miss more than three days of work a month due to pain and doctors' appointments, not reaching requirements. [A.R. at 71.] Green cannot now complain that Lane's testimony conflicted with the job description in the *Dictionary of Occupational Titles* when he had the opportunity to elicit testimony to that effect at the hearing and did not. *McClanahan*, 474 F.3d at 837.

Accordingly, Green has not shown that the ALJ erred in relying on the vocational expert's testimony.

## C.

Lastly, Green objects to the ALJ's residual functional capacity assessment because it did not take into account Green's mental limitations, which the ALJ specifically noted that Green had. [R. 13-1 at 7–8.] He argues that the ALJ erred as a matter of law in failing to include Green's mental limitations as a part of the residual functional capacity analysis and in the hypothetical question to the vocational expert. [*Id.*

7

at 7.] Further, the error was not harmless, he argues, because the Commissioner rested his decision on Green's ability to perform his past relevant work. [*Id.* at 8.]

In determining whether Green had severe impairments, the ALJ wrote: "All of the above suggests at most the claimant's mental medically determinable impairments by themselves cause only mild limitation in the functional domain areas of daily living, social functioning, and concentration, persistence and pace." [A.R. at 17.] In conducting the residual functional capacity analysis, the ALJ made no mention of Green's mild mental limitations. [*See id.* at 20–24.]

The Court agrees with Green that the ALJ erred in failing to include Green's mild mental limitations as a part of the residual functional capacity analysis. The Commissioner's regulations require the ALJ to consider *all* of a claimant's medically determinable impairments, even impairments that are not "severe," in deciding the claimant's residual functional capacity. 20 C.F.R. § 404.1545(a)(2); *see also id.* § 404.1545(e). The ALJ's failure to include Green's mild mental limitations in the residual functional capacity analysis violated those instructions.

However, the ALJ's omission of Green's mental impairments in the residual functional capacity analysis does not require remand because that error did not prejudice Green on the merits. *See Bowen*, 478 F.3d at 746. The ALJ conducted an extensive discussion of Green's depression and anxiety before concluding that Green's "mental medically determinable impairments by themselves cause only mild limitation in the functional domain areas of daily living, social functioning, and concentration, persistence and pace." [A.R. at 17–18.] Specifically, the ALJ cited state agency physician Alex Guerrero's opinion that Green's mental impairments did not affect his ability to work.

8

[*Id.* at 17.] The ALJ noted that Green's "mental status exams have been largely within normal limits, showing euthymic to normal mood and normal behavior although at times with some degree of irritability, a somber but nonanxious affect, intact attention, no significant memory impairment, no thought disorder, intact judgment and insight, and normal speech." [*Id.*] The ALJ discussed how Green had "denied problems managing stress and change." [*Id.*] Notably, the ALJ observed that in April 2014, Green "denied any anxiety, emotional liability, depression, sleep disturbance, or decreased functioning ability," [*id.*], which was five months *after* Green's alleged disability onset date.

In spite of the error, therefore, substantial evidence supports the ALJ's residual functional capacity analysis, and the error did not prejudice Green on the merits.

## IV.

The Commissioner's decision to deny Green's claim is **AFFIRMED** and that this action is **DISMISSED WITH PREJUDICE**.

A separate order and judgment shall issue.

Date:

cc:     Counsel of Record